UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**CRIMINAL ACTION NO. 3:07CR-00073-JHM**

**UNITED STATES OF AMERICA**                                                           **PLAINTIFF**

**VS.**

**TONY DELANO**                                                                              **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion by Defendant, Tony Delano, to suppress the search and seizure of several computers from his residence [DN 23]. On September 4, 2007, a suppression hearing was held. The parties filed supplemental briefs [DN 33, DN 34]. Fully briefed, this matter is ripe for decision.

**Background**

On May 10, 2006, United States Immigrations and Customs Enforcement ("ICE") Special Agents, Ron Crawford and Magin Sacasas, went to the residence of Tony Delano located in LaGrange, Kentucky, to conduct a "knock and talk"[1] after receiving information from the Newark, New Jersey ICE office that an individual using the email address TONY28@aol.com purchased a subscription to four websites linked to child pornography.

---

[1] Federal courts have recognized "knock and talk" consensual encounters "as a legitimate investigative technique at the home of a suspect or an individual with information about an investigation." United States v. Thomas, 430 F.3d 274, 277 (6th Cir. 2005); United States v. Chambers, 395 F.3d 563 (6th Cir. 2005)("Courts generally have upheld this investigative procedure as a legitimate effort to obtain a suspect's consent to search." Id. at 568 n. 2)). The Defendant has not challenged the use of the "knock and talk" in the present case.

The ICE Agents did not have a search warrant or an arrest warrant.

Delano's residence was located in a residential subdivision of single-family homes. The Agents were dressed in casual clothing, jeans and t-shirts, with untucked, unbuttoned shirts over the t-shirts and concealing their weapons. On arrival at the residence, Delano answered the door and according to Agent Crawford, both himself and Agent Sacasas introduced themselves by showing Delano their government-issued ICE credentials. The agents asked permission to speak with Delano and Delano invited them into his residence. The interview was conducted in the home's living room, with the participants sitting on a sofa and chairs.

Delano spoke with the agents for approximately one hour and fifteen minutes. During the interview, Delano was asked if he would be willing to confirm two credit card numbers associated with the investigation, and Delano agreed and confirmed his possession of the two credit card numbers. Delano also advised the agents that he had recently purchased a Dell computer approximately six weeks prior to the interview and had purchased a laptop approximately one year prior to the interview. Delano confirmed that he had internet access provided by Insight Communications. Delano further provided the agents with his previous email address, [TONY28@aol.com.](mailto:TONY28@aol.com) Delano was asked if he had ever purchased child pornography. Delano replied by saying, "I would prefer not to answer." Agent Crawford testified that he then told Delano that it appeared he was not being totally candid and explained that his credit cards were involved in purchases from web sites that contained child pornography. Agent Crawford then asked Delano if he would be willing to grant consent for

ICE agents to search his computers. Delano replied, "I guess you guys are going to take the computers anyway." Agent Crawford provided Delano with a copy of an ICE Consent to Search Computer/Electronic Equipment Form. According to Agent Crawford, Delano signed the consent to search form after reading the form and filling in the blanks.

After completing the form, Delano showed the agents the home office, where the computers were located. Agent Crawford testified that upon entering the office, Agent Sacasas noticed a child pornographic image on one of the computers. Agent Crawford stated that Delano helped the agents disconnect the computers and carry them to the agents' vehicle.

Defendant filed this motion to suppress the search and seizure of the three computers obtained from his residence. Defendant argues that he did not voluntarily consent to law enforcement searching his computers and as a result, the evidence obtained from the search of the computers should be suppressed.

## Discussion

The Fourth Amendment prohibits searches without a warrant except in limited circumstances, such as when the search is conducted with consent. In order to justify a search by consent, "the government must prove by 'clear and positive testimony' that the asserted consent was 'voluntary' and 'unequivocally, specifically, and intelligently given.'" United States v. Buckingham, 433 F.3d 508, 514 (6th Cir. 2006)(quoting United States v. Worley, 193 F.3d 380, 385-86 (6th Cir.1999)). "The question of whether a consent to search is voluntary and knowing is a question of fact to be determined from the totality of all the circumstances." United States v. Abdullah, 162 F.3d 897, 902 (6th Cir.1998).

> To evaluate the totality of the circumstances, the Court should consider several factors such as "the age, intelligence, and education of the individual; whether the individual understands the right to refuse to consent; and whether the individual understands his or her constitutional rights." United States v. Ivy, 165 F.3d 397, 402 (6th Cir.1998). In addition, the Court "should consider the details of the detention, including the length and nature of detention; the use of coercive or punishing conduct by the police, and indications of 'more subtle forms of coercion that might flaw [an individual's] judgment.'" Id. (quoting United States v. Watson, 423 U.S. 411, 424 (1976)) (citation omitted). No single factor is dispositive of the analysis. Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973).

United States v. Bradley, 163 Fed. Appx. 353, 356 (6th Cir. 2005), cert. denied, 547 U.S. 1105 (2006). Finally, voluntary and knowing consent does not require that a defendant be advised that he is entitled to refuse consent. United States v. Drayton, 536 U.S. 194, 206 (2002).

During the suppression hearing, the witnesses presented contradictory testimony regarding the location of the conversation related to the consent to search and the nature of Defendant's verbal response to the agents' request to look at the computers. Agent Crawford testified that while in the living room of Delano's residence, he and Agent Sacasas asked Delano if he would be willing to grant consent for ICE agents to search his computers. Delano replied with the statement, "I guess you guys are going to take them anyway." Agent Crawford responded by telling Delano that he and Agent Sacasas were asking for Delano's written consent to take the computers and provided Delano with a copy of an ICE Consent to Search Computer/Electronic Equipment Form.

According to Agent Crawford, Delano read the form and completed the blanks for: his name, by filling in "Tony Delano;" the individuals authorized, by filing in "ICE Agents;"

the location, by filling in the address of his residence; and the language, by filling in "English. After reading the form and filing in the blanks, Delano signed and dated the form. Agents Crawford and Sacasas also signed the form as witnesses. After completing the form, Delano showed the agents the home office, where the computers were located. Agent Crawford testified that upon entering the office, Agent Sacasas noticed a child pornographic image on one of the computers. Agent Crawford stated that Delano helped the agents disconnect the computers and carry them to the agents' vehicle.

In contrast, Delano testified that at some point during the interview in the living room, he was asked by the agents whether he would permit them to view the computers. Delano stated that he took the agents back into the office. Delano testified that he was then presented with a consent to search form and at that point, he **asked** the agents, "well, are you going to take them anyway?" According to Delano, Agent Sacasas nodded his head affirmatively.[2] Delano testified that he did not read the consent to search form and was simply directed by the agents to fill in the blanks. Based on the action of Agent Sacasas, Delano argues that any consent that he provided could not be said to be voluntary as he felt had no choice since the agents were going to take the computers anyway.

When presented with contradictory testimony, this Court must weigh the evidence and make a credibility determination. After reviewing the testimony at the hearing and the demeanor of the witnesses, the Court finds that Agent Crawford's recollection of the consent

---

[2]Agent Crawford testified that he did not recall Agent Sacasas nodding his head.

5

to search more credible than Delano's account. The Court finds no reason to question the testimony of Agent Crawford.

Having determined that Delano gave consent for the agents to take the three computers, the remaining issue is whether Delano's consent was knowing and voluntary. In determining whether a defendant's consent was voluntary, the Court must examine "the totality of all the surrounding circumstances." Schneckloth, 412 U.S. at 226. First, the record reflects that Delano is a 38-year-old man, has a Bachelor's Degree in Mechanical Engineering, and has completed half of the courses required to attain a Master's Degree. He is employed as a Manufacturing Engineering Manager at Ford Motor Company managing 129 engineers and maintenance personnel. Given Delano's educational background and work history and having observed him testify, the Court concludes that the defendant is an intelligent man. Additionally, Agent Crawford testified that during the interview he did not notice any open containers of alcohol, bottles of pills or other medication, or controlled substances in the home. Crediting the agent's testimony, the Court finds that Delano was not impaired at the time he gave the agents consent to search the computers.

Furthermore, in examining the details of the interview, the Court finds that the agents did not use coercive tactics, and Delano was not detained when he gave his consent. Delano invited the agents into his home, directed them to the living room, and answered their questions. The agents asked for consent to search his computers. Delano read the consent to search form, filled in the blanks, and signed and dated the form. The form provided in relevant part that: "I have also been informed of my right to refuse to consent to such a

search." The form also states: "I hereby consent to the search of those items for any data or material which is contraband or evidence of any crime. I understand that this contraband or evidence may be used against me in a court of law." The agents were at Delano's home for an hour and fifteen minutes. Examining the totality of the circumstances the Court concludes that the consent was voluntary and "unequivocally, specifically, and intelligently given." Worley, 193 F.3d at 386.

Delano argues that in the event the Court credits Agent Crawford's testimony, Delano's statement, "I guess you guys are going to take them anyway," did not indicate a consent to search. Relying on United States v. Worley, Delano argues that the statement was merely a response "conveying an expression of futility in resistance to authority or acquiescing in the officers' request." 193 F.3d at 386 (holding that "you've got the badge, I guess you can [search]" is not consent where the context and location of the encounter was intimidating and defendant testified that he felt he had no choice). Delano asserts that just like the defendant in Worley, he felt he had no choice but permit the agents to take his computers. The Court finds that Delano's reliance on Worley is misplaced.

First, unlike the defendant in Worley, the United States is not relying upon a verbal statement of consent. Instead, when presented with Delano's statement, Agent Crawford referred Delano to the Consent to Search Computer Form which advised Delano of his rights and of the consequences of the search. The Consent Form clearly dispelled any belief by Delano that he had no choice but to permit the search of his computers. The form specifically notified Delano that he had the right to refuse to consent to the search.

7

Second, earlier in the interview, Agent Sacasas asked Delano if he had ever purchased child pornography and Delano answered: "I would prefer not to answer." Delano's refusal to answer that question and the response he provided clearly indicate that he did not feel so nervous, threatened or coerced by the agents during the interview that he felt he had no choice but to cooperate.

Finally, the Court also notes that no evidence was presented to indicate that Delano protested the seizure of the computers once the search began. In fact, unlike the defendant in Worley, the evidence reveals that the Defendant actually helped the agents disconnect the computers and remove them from the residence engaging in small talk with the agents during this process. See also United States v. Smith, 2007 WL 2300344, *7 (E.D. Tenn. Aug. 8, 2007).

For these reasons, the Court finds that the search of the computers was conducted pursuant to a valid consent search.

## Conclusion

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Defendant to suppress the search and seizure of the computers from his residence [DN 23] is **denied.**

cc:     counsel of record

8